IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HARRY LYNN BONSALL, JR.,       :

        Plaintiff,

                                     CIVIL ACTION NO.: PWG-05-822

   v.                      :

U.S. DEPT. OF JUSTICE, et al.

        Defendants.        :

## MEMORANDUM

This case has been referred to me for all proceedings with the consent of the parties, Paper No. 13.  This is an action under the Freedom of Information Act ("FOIA"), in which the *pro se* Plaintiff, Harry Lynn Bonsall, Jr. seeks judicial review of a final administrative ruling made by the United States Department of Justice ("USDOJ"), Office of Information and Privacy ("the Office").  (Paper No. 1, Petition for Judicial Review, "Petition").  Its ruling affirmed the FBI's decisions regarding the release of documents sought by Mr. Bonsall under the FOIA.  In addition to the USDOJ Office, Mr. Bonsall has named the Office's co-director, Richard L. Huff, as a defendant.  (*Id.*)

Mr. Bonsall requested specific records pertaining to him from the Federal Bureau of Investigation ("FBI").  Mr. Bonsall is currently incarcerated at Western Correctional Institution in Cumberland, Maryland and sought "serology reports and/or other evidence" in the FBI's possession pertaining to his state court conviction in Charles County,

Maryland.[1]  (Paper No. 16, Defendants' Motion to Dismiss, or in the Alternative for

Summary Judgment and accompanying Memorandum "Def.'s Mtn.," Ex. A, Letter from

Harry Bonsall Jr., September 27, 1999).  As explained in more detail below, in response

to Mr. Bonsall's requests, the FBI conducted several searches and produced a total of

sixteen (16) pages of documents, three (3) in their entirety, and thirteen (13) with

information redacted in thirty (30) different places within the documents.[2]  (Paper No. 16,

Def.'s Mtn., Affidavit of David M. Hardy, Chief of the Record/Information

Dissemination Section, Records Management Division, "Hardy Aff.," Federal Bureau of

Investigation Headquarters, "FBIHQ," and Hardy Aff., Ex. N, 16 pages sent to Mr.

Bonsall in response to his requests).  The FBI redacted the names of three categories of

people:  (1) FBI and Support Personnel, (2) County Law Enforcement Employees, and

(3) the victim in the criminal investigation concerning Mr. Bonsall  (*Id*.)  The FBI

asserted that the withheld names were exempt from disclosure under section (j)(2) of the

Privacy Act, 5 U.S.C. § 552 (28 C.F.R. 16.96(a)(2004), and under FOIA exemption,

(b)(7)(C). [3]  (Paper No. 16, Def.'s Mtn., Hardy Aff., Ex. D).  Mr. Bonsall appealed the

---

[1] Although the records show that Mr. Bonsall was accused of both rape and burglary, the record is unclear as to whether he was convicted and subsequently incarcerated for both of these crimes, or whether there were additional charges.  *See* Def.'s Mtn., Hardy Aff., Ex. N, Bonsall 1.

[2] Exhibit N actually contains a total of 17 documents, however, there is a page marked "Bonsall 10-11" in which the government provides a form letter declaring that it deleted these two pages from the record because they are duplicative of Bonsall 1 and 2.  The form letter also indicates that Mr. Bonsall was not charged the copying fees for these deleted duplicative pages.

[3] In its Motion and accompanying affidavit, the FBI asserts that both 5 U.S.C. § 552 (b)(6) ("FOIA Exemption 6") and (b)(7)(C) ("FOIA Exemption 7") are the bases for withholding the redacted names in the 13 released pages; however, a review of the record reveals that prior to the appeal before this Court, the FBI and the Office had only asserted Exemption 7 as the basis for the redactions.  (Compare Hardy Aff., Ex. L, Office March 14, 2005 Letter to Mr. Bonsall in response to his appeal with the 13 pages and deletion page attached, with Hardy Aff., Ex. N at 1-15, identified by Mr. Hardy as the same 13 pages plus deletion page that had been previously been released).  A comparison of the 13 pages and deletion page in Exhibit L, with the 13 pages plus deletion page in Exhibit N shows that they are in fact, the same pages; however, a review of the notations made next to the redacted portions shows that in Exhibit L, only Exemption 7 was noted, while in Exhibit N there is an additional notation next to each redacted section, Exemption 6.

FBI's actions to the United States Department of Justice, Office of Information and Privacy, which affirmed the FBI's actions.  (Paper No. 16, Def.'s Mtn., Hardy Aff., Exs. J & L).  Mr. Bonsall now has petitioned this Court for judicial review of the final administrative decision to affirm the FBI's actions in response to Mr. Bonsall's requests under the FOIA.  (Paper No. 1, Petition for Judicial Review).

Mr. Bonsall's petition argues that the FBI improperly withheld "preliminary laboratory results, findings and reports . . . [that] are vital and necessary in the preparation of post-trial litigation, and the requested information may further be used as evidence in possible civil litigations [sic] as a result of malicious and wrongful prosecution."  (*Id*. at ¶9).  Mr. Bonsall also claims that the FBI improperly asserted FOIA exemption 7 as its basis to withhold several names within the released documents because he claims the disclosure of at least the victim's name would not constitute an invasion of privacy.[4]  (*Id*. at ¶¶ 5-7).

Pending before this Court is Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment.  (Paper No. 16, Def.'s Mtn).  The motion is ripe for

---

Further proof that Exemption 6 had not previously been asserted as a basis for withholding the names is the form cover letter that accompanied the 13 pages and deletion page in its first release to Mr. Bonsall on December 12, 1999.  (Ex. D).  This letter listed separately each provision of the FOIA, so that the FBI could check off which provisions of the FOIA were being asserted as the basis for any withholdings.  (*Id*.)  Only FOIA Exemption 7 contained an "x" in the box next to it, while the box next to FOIA Exemption 6 remained empty.  (*Id*.)  In addition, the Office's Letter in response to Mr. Bonsall's appeal to it only mentions FOIA Exemption 7 as a proper basis for withholding any redacted information.  (Ex. L).  Finally, Plaintiff's petition to this Court for judicial review argues that FOIA Exemption 7 is an improper basis for withholding information, but makes no mention of FOIA Exemption 6.  Thus, based on this information in the record, I find that the assertion that FOIA Exemption 6 is a basis for the withholding the names occurred for the first time when the Office filed this motion.  As explained in this memorandum, the redacted portions of the 13 pages were properly withheld under FOIA Exemption 7 alone; however, it is curious why the government asserted Exemption 6 for the first time here without explanation.

[4] Mr. Bonsall also argues that the Office improperly withheld the list of blood samples and other samples taken from him (Paper No. 22, Pl.'s Mtn at 3) because the pages previously released to him on December 22, 1999 and March 14, 2005 had these lists redacted in addition to the names at issue redacted.  (Paper No. 16, Def.'s Mtn., Hardy Aff., Ex. L)  The same pages accompanying the Office's motion, however, now reveal the sample lists, (Ex. N), and only withhold the names; therefore, Mr. Bonsall's request for these sample lists is now moot.

decision.  (Paper No. 22, Plaintiff's Response and Paper No. 23, Defendants' Reply).

Having reviewed the parties' papers and exhibits, I conclude that a hearing is

unnecessary.  Local Rule 105.6.  For the reasons stated below, I find Plaintiff has failed

to state a claim for relief against Mr. Huff, and therefore, Defendants' Motion to Dismiss

in regards to Mr. Huff is GRANTED.  In addition, I find that the FBI conducted a

"reasonable search" as required by law, and disclosed the documents found as result of

the search, thus, this Court need not order further production of records in response to

Mr. Bonsall's request.  Finally, the record shows that the FBI correctly asserted that the

released documents were protected by the Privacy Act and that the names withheld from

disclosure were properly withheld under the FOIA exemption (b)(7)(C); therefore, the

Office also properly affirmed the FBI's decisions to withhold those names.  Thus, the

USDOJ is entitled to judgment as a matter of law; I therefore GRANT summary

judgment in its favor.

## FACTUAL BACKGROUND

*Introduction*

The chronology of events relating to Mr. Bonsall's request and the explanation of

the FBI's search were contained in an affidavit executed by David M. Hardy, who is

identified as the Section Chief of the Records Management Division of the FBI.  Mr.

Hardy's affidavit was an attachment to USDOJ's motion.  (Paper No. 16, Def.'s Mtn.,

Hardy Aff.).  Accompanying the affidavit are Exhibits A through N, the contents which

are explained in detail below, but in sum are the correspondence between the parties in

relation to Mr. Bonsall's request for information and copies of the documents produced in

response to Mr. Bonsall's request.  *Id.*  Because, as explained below, it is the FBI's

burden to:  (1) establish that an adequate search was completed in good faith in response to Mr. Bonsall's requests and, (2) establish that the exemptions asserted regarding the excised portions of the records the FBI did release were properly asserted,[5] it is necessary to detail the chronology of events, including explaining each exhibit, and describing the search process with specificity.  Mr. Bonsall's response to the government's motion does not dispute the chronology of events, but rather asserts that it withheld unmentioned reports and that the withheld information within the released documents should not be "blacked out," or in other words, redacted.  Therefore, the facts regarding the chronology of events are not disputed, but whether the FBI's responses and searches as a whole were sufficient as a matter of law, and whether the redacted information was properly withheld as a matter of law, are the issues to be resolved here.  Thus, what follows is an undisputed chronology from the Office's affidavit and the correspondence between the parties.

*Chronology of Mr. Bonsall's Requests and the FBI's Responses*

In a letter dated September 27, 1999, Mr. Bonsall requested "any serology reports and/or other evidence that [the FBI] may have pertaining to [his] case," case number 2-2-0344, which took place in Charles County, Maryland.  (Paper No. 16, Def.'s Mtn, Hardy Aff. at ¶ 5 and Exhibits, Ex. A, Mr. Bonsall's September 27, 1999 Letter to the FBI Crime Lab).[6]  FBIHQ responded to Mr. Bonsall's request in a form letter dated October 14, 1999, which explained that Mr. Bonsall would have to provide additional information to process his request.  (Hardy Aff., Ex. B, FBI's October 14, 1999 Letter to Mr.

---

[5] *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994); *Freeman v. U.S. Dept. of Justice*, 723 F.Supp. 1115, 1119 (D. Md. 1988); *Hanson v. U.S. Agency for Int'l Development*, 372 F.3d 286, 290 (4th Cir. 2004).  These cases and their holdings are explained in more detail *infra*.

[6] Hereinafter, the exhibits that are attached to the Hardy Affidavit, which is part of Defendants' Motion and Memorandum, will be referred to as "Hardy Aff., Ex. [insert corresponding letter here]."

　
Bonsall).  Specifically, the form letter included blank spaces for him to provide his full

name, current address, date of birth, and place of birth.  (*Id*.)  The form letter also

indicated that Mr. Bonsall should provide a notarized signature, or in lieu of a notarized

signature, a declaration under 28 USC § 1746.[7]  (*Id*.)  Mr. Bonsall filled in the required

information and provided a declaration, which was dated October 17, 1999.  (*Id*.)  In a

form letter dated November 15, 1999, the FBI acknowledged Mr. Bonsall's FOIA request

and assigned the request the identification number 910636-000.  (Hardy Aff., Ex. C,

FBI's November 15, 1999 Letter to Mr. Bonsall).

        In a form letter dated December 22, 1999, the FBI referenced Mr. Bonsall's

request identification number and stated that thirteen (13) pages of FBI records were

reviewed pursuant to his request, and that those thirteen (13) pages were being released to

him with the form letter.  (Hardy Aff., Ex. D, FBI's December 22, 199 Letter to Mr.

Bonsall at 1).  The letter also explained that deletions had been made to the enclosed

pages based upon both the Privacy Act and the Freedom of Information Act and listed the

specific provisions of both acts, which each had a box next to it.  (*Id*.)  Two of the boxes

had an "x" inside them, and the letter stated that these marks indicated the subsections

cited within the disclosed documents as the basis for withholding excised information.

(*Id*.)  Exemption (b)(7)(C) of the FOIA ("FOIA Exemption 7") was marked, as well as

(j)(2) of the Privacy Act.[8]  (*Id*.)  The letter also explained that the specific applicable

provisions were noted near the redacted portions.  (*Id*.; *see also* the notations in Ex. N,

---

[7] The letter explained that the information and the signature (or declaration) were required to ensure that the
FBI conducted an accurate search and that it only released information to individuals with a right of access
to that information.

[8] FOIA Exemption 6 was not marked.  *See supra* n. 3.

the documents disclosed to Mr. Bonsall in response to his request, at Bonsall 1-15[9]).  The

letter further explained that if any pages were withheld within their entirety, a deleted

page information sheet was substituted showing the reasons or basis for the deletion.[10]

(*Id*. at 2)  The letter also informed Mr. Bonsall that he could appeal any denials and

provided instructions regarding how to file his appeal.  Lastly, the letter identified FBI

file number 95-HQ-298187, the file that was processed in response to Mr. Bonsall's

request.  (*Id*.)

   In a letter dated July 2, 2004, Mr. Bonsall made a second request to the FBI under

the FOIA.  (Hardy Aff., Exhibit E, July 2, 2004 Bonsall Letter to FBI).  After requesting

a fee waiver for search fees and 100 free pages, Mr. Bonsall requested:

> . . . a complete and thorough search of all filing systems and locations for all
> records maintained by [the FBI] pertaining to and/or captioned:  Harry Bonsall;
> File No. 95-298187; File No. 95-298187-2; Laboratory No. 10401058; Laboratory
> 10401058 S ZI IS AA; Charles County Case No. 2-2-0344 including, without
> limitation, copies of any and all:  Laboratory Reports; Preliminary Testing Results
> and Findings; Laboratory findings and conclusions' Serology Test Reports and
> Findings; Liquid Blood Examination; Suspect and Victim Test Comparisons and
> Results.

(*Id*.)  Mr. Bonsall also requested, "[t]he names and positions of those Person(s)

responsible for the testing and handling and chain of custody of any and all samples that

were provided by the Office of the Sheriff for Charles County Maryland and/or any other

agency."  (*Id*. at 2).  Mr. Bonsall added,

> This request specifically included where appropriate 'main' files and 'see
> references,' including but not limited to numbered and lettered sub files and

---

[9] To state that the FBI released thirteen (13) pages and then cite to pages "Bonsall 1-15" of Exhibit N is not
an error.  Each page released to Mr. Bonsall was labeled "Bonsall" followed by a corresponding page
number.  Bonsall pages 10 and 11 were not included in the pages released because the FBI explained that
they were duplicates of Bonsall pages 1 and 2.  The FBI replaced Bonsall pages 10 and 11 with one
"deletion page" and labeled it "Bonsall 10 and 11."

[10] As explained *supra* n. 2 and n. 9, in response to Mr. Bonsall's request, the FBI inserted one "deletion
page" in regards to two pages in the file that were duplicates of already produced pages.

control files . . . a search of the Electronic Surveillance (ELSUR) index, or any similar technique for locating records of electronic surveillance and the COINTELP index . . . all records be produced with the administrative pages . . . copies of 'see reference' cards, abstracts, search slips, including search slips used to process this request, file covers, multiple copies of the same document if they appear in a file, tapes of any electronic surveillance, photographs and logs of physical surveillance (FISUR).  Please place missing documents on 'special locate.'

(*Id.*)  Mr. Bonsall's request also clarified that he wanted all the records; that any exemptions claimed for deletions of pages or sections should be specified; that excised material should be "blacked out" rather than "whited out;" and that he be provided with the information needed to appeal any denials.  (*Id.*)  This letter contained Mr. Bonsall's notarized signature.  (*Id.*)

By form letter dated July 15, 2004, the FBI sent Mr. Bonsall a similar letter to the one it sent in response to his first request, asking that Mr. Bonsall provide specific identifying information.  (Hardy Aff., Ex. F, July 15, 2004 FBI Letter to Bonsall).  By signed declaration dated July 24, 2004, Mr. Bonsall provided the identifying information. (*Id.*)

On July 26, 2004, Mr. Bonsall's father faxed Mr. Bonsall's Motion to Proceed in Forma Pauperis and Declaration in Support of Request to Proceed in Forma Pauperis. (Hardy Aff., Ex. G, July 26, 2004, Bonsall Fax and Motion).  In his motion, Mr. Bonsall stated that because of his poverty, he was unable to pay the costs of the proceedings and asserted he was entitled to redress.  (*Id.*)

In a letter dated August 6, 2004, the FBI responded to Mr. Bonsall's second request and assigned his request the number 1001952-000.  (Hardy Aff., Ex. H, FBI August 6, 2004 Letter to Bonsall).  This letter also stated that information that "might relate to your FOIA request was located by a search of the indices to the Central Records

System at FBI Headquarters.  However, this material is unavailable for review.  If and

when it is verified that the information is pertinent to your request, you will be notified."

(*Id*.)  A search of the Electronic Surveillance Indices (ELSUR) revealed no responsive

records.  (*Id*.)  The letter did not explain why the search results of the Central Records

System ("CRS") indices did not definitively show that there was information responsive

to Mr. Bonsall's request.  The letter also did not indicate that they were enclosing a copy

of the index or other information that suggested that there was responsive information.

Further, the letter did not explain why the potentially responsive information was

"unavailable for review."  The letter concluded by advising Mr. Bonsall of the

administrative appeal filing procedure with the U.S. Department of Justice ("USDOJ"),

Office of Information and Privacy ("the Office").  (*Id*.)

   In a letter dated August 23, 2004, the FBI told Mr. Bonsall that the "unavailable"

but potentially responsive documents referenced in its August 4, 2004 letter had been

located, reviewed, and "determined not to be identifiable to [Mr. Bonsall]."  (Hardy Aff.,

Ex. I, FBI August 23, 2004 Letter to Bonsall).  The letter did not explain why the original

search suggested that these particular documents could be responsive.  The FBI also

advised, " . . . you received a release of 13 pages on December 22, 1999.  Our records

reveal that there is no additional information since your previous release."  (*Id*.)  Again,

the letter concluded with information regarding the appeal procedure.  (*Id*.)

   In a letter dated August 25, 2004, Mr. Bonsall filed an administrative appeal with

the office concerning the FBI's August 6, 2004 response to his FOIA request.  (Hardy

Aff., Ex. J, Bonsall August 25, 2004 Letter to the Office).  In support of his appeal, Mr.

Bonsall stated generally that the FBI had denied his request and that it had done so

improperly because the unspecified withheld information pertained to him and pertained to evidence regarding his incarceration.  (*Id.*)

The Office responded to Mr. Bonsall's appeal in a letter dated September 27, 2004, stating that it received the appeal on August 30, 2004 and that the appeal had been assigned appeal number 04-2758.  (Hardy Aff., Ex. K, USDOJ Office September 27, 2004 Letter to Bonsall).

The Office responded to the substance of Mr. Bonsall's appeal in a letter dated March 14, 2005.  (Hardy Aff., Exhibit L, USDOJ Office March 14, 2005 Letter to Bonsall).  The Office stated that Mr. Bonsall was the subject of two FBI files:  (1) one main office file, number 95-HQ-298187, which had previously been identified in the FBI's response and release of documents on December 22, 1999; and (2) one Baltimore Field Office file, number BA-62-0-13663P2, which had not been previously identified in response to either of Mr. Bonsall's FOIA requests.  (*Id.*)  Referring to both files, the letter explained,

> These records are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a (j)(2). . .Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act to afford you the greatest possible access to the records you requested.

(*Id.*)

The Office next explained that it considered the appeal, spoke with the FBI and a staff member, and decided to again release to Mr. Bonsall the same thirteen (13) pages and one deletion page from FBI file number 95-HQ-298187.  (*Id.*)  As previously noted in the FBI's August 23, 2004 letter to Mr. Bonsall, this letter stated that there were no new portions of the file since it was last released to Mr. Bonsall in December 1999, and that FBI Headquarters had not located any other documents responsive to his request.

(*Id.*)  In addition, the Office found that the FBI properly redacted information within the

released pages under FOIA Exemption 7 because the records were compiled for law

enforcement purposes and the release of the withheld information "could reasonably be

expected to constitute an unwarranted invasion of the personal privacy of third parties."

(*Id.*)

      As mentioned above, this letter revealed that Mr. Bonsall was the subject of a

second file, Baltimore Field Office file number BA-62-0-13663P2.  (Hardy, Aff., Ex. L at

1-2).  According to the record, this was the first time in which Mr. Bonsall was informed

that there was a second file concerning him.  The letter advised that although the file may

be responsive to Mr. Bonsall's request, the Baltimore Field Office was unable to locate

the file, therefore a "special locate" was initiated.  (*Id.*)  The Office further advised that

once the file was found, if the contents were responsive to his request, the Office would

send the releasable portions to him.  (*Id.* at 2).  The letter stated that Mr. Bonsall could

appeal the actions regarding either or both files to the Office.  (*Id.* at 1-2).  It also advised

that if he was dissatisfied with these actions, Mr. Bonsall could seek judicial review in

accordance with 5 U.S.C. § 552(a)(4)(B).  (*Id.* at 2).

      In a letter dated July 15, 2005, the Office informed Mr. Bonsall that the file that

the Baltimore Field Office had previously been unable to locate had been found.  (Hardy

Aff., Ex. M, Office March 14, 2005 Letter to Bonsall).   The letter advised that the file

contained three pages and that all three pages were being released to Mr. Bonsall in their

entirety.  (*Id.*)  The three pages were a two-page letter and the envelope that Mr. Bonsall

had written to the FBI Baltimore Division in August 2003, unrelated to the FOIA

requests.  (*Id*.; *see also* Ex. N at Bonsall 16-18).[11]  The Office also stated that the release

of these three pages concluded the processing of his FOIA request.  (Hardy Aff., Ex. M).

 Mr. Hardy's affidavit states that the searches completed in response to Mr.

Bonsall's request were conducted on two different systems:  the Central Records System

("CRS") and the Electronic Surveillance ("ELSUR") Indices.  (Hardy Aff. at 7-11).  The

CRS consists of administrative, applicant, criminal, personnel, and other files acquired in

the course of the FBI's law enforcement responsibilities.  (*Id*. at 7).  The ELSUR indices

contain information regarding the people of whom the FBI intercepted electronic and/or

voice communications.  (*Id*. at 10).  The affidavit states that as a result of the search on

the CRS, the two aforementioned files – one at Headquarters and one at the Baltimore

Field Office - were located and released to Mr. Bonsall in response to his request.  (*Id*. at

12).  No responsive records were located as a result of the ELSUR search.  (*Id*. at 11).

 Within the released documents, the FBI redacted names in thirty different places.

Mr. Hardy's affidavit states that these names were of:  (1)  FBI and Support Personnel,

(2) County Law Enforcement Employees, and (3) the victim in the investigation

concerning Mr. Bonsall.  (*Id*. at 14-15).

 Mr. Bonsall's petition appeals any denials by the FBI and the office.   First, his

petition suggests that there are additional documents that have not been released.  He

claims that the Office has improperly retained "preliminary laboratory results, findings

and reports . . . [that] are vital and necessary in the preparation of post-trial litigation, and

the requested information may further be used as evidence in possible civil litigations

[sic] as a result of malicious and wrongful prosecution."  (*Id*. at ¶ 9).  Secondly, Mr.

---

[11] Mr. Bonsall's letter offers the FBI his assistance in decreasing crimes involving sex against adults and children.

Bonsall claims that the FOIA Exemption asserted for denying him the requested information "is in reference to the alleged victim in the criminal case in which the Petitioner is presently incarcerated for committing," and ". . . that the requested information deals with primarily laboratory reports, finding [sic] and preliminary testing results, which would not be and [sic] unwarranted invasion of the victim's privacy." (*Id.* at ¶¶ 6, 7).

## **MOTION TO DISMISS AND SUMMARY JUDGMENT STANDARDS**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, "a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g., Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice

because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party for summary judgment has the burden to demonstrate the absence of any genuine issue of material fact.  *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). In determining whether summary judgment should be granted, the court "must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id. citing Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 598 (4th Cir. 1985).

To be entitled to consideration on summary judgment, the facts set forth by the parties in affidavits or otherwise must be such as would be admissible in evidence. *See* Fed. R. Civ. P. 56(c); *see also Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial.").

The existence of only a "scintilla of evidence," however, is not enough to defeat a motion for summary judgment.  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Anderson,* 477 U.S. at 251.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

When evaluating evidentiary facts under Rule 56 to decide whether the motion should be granted, the Court uses the same standard used under a Rule 50 motion for Judgment as a Matter of Law: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-251; *Celotex Corp.* 477 U.S. at 323 (1986); *Leon v. St. Joseph's Hospital*, 871 F.2d 1229, 1233 (4th Cir. 1989). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. . . . the Judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Douglas v. PHH*, 832 F.Supp. 1002, 1008 (4th Cir. 1993) (*citing Anderson*, 477 U.S. at 252.) "As a general rule . . . FOIA determinations should be resolved on summary judgment." *Hanson v. U.S. Agency for Int'l Development*, 372 F.3d 286, 290 (4th Cir. 2004).

The Office first argues that Mr. Huff should be dismissed as a Defendant because it is improper to sue an individual in an FOIA claim. Plaintiff responds that even if this is correct, he should be entitled to amend his Complaint as necessary to name the proper

parties.  Although the Fourth Circuit has not expressly resolved this issue, the general

consensus is that federal officials cannot be sued under the FOIA.  *Petrus v. Bowen*, 833

F.2d 581, 582 (5ᵗʰ Cir. 1987).¹²  Therefore, the Defendant's Motion To Dismiss the

claims against Mr. Huff will be GRANTED.

     The Office also argues that it is entitled to summary judgment because it

conducted the required search for responsive documents under the FOIA; released the

responsive documents; and, under the FOIA Exemptions, only withheld names when

their disclosure would constitute an unwarranted invasion of privacy.  (Paper No. 16,

Def.'s Mtn.).

     Mr. Bonsall's response states that the Office has improperly withheld preliminary

test results of blood samples taken from him and the alleged victim.  (Paper No. 22,

Bonsall's Response at 4-5).  Secondly, Mr. Bonsall asserts that the Office should have

disclosed the names that they withheld in the released documents by asserting FOIA

exemptions because their release would not be an invasion of privacy.  (*Id.*)

     Having thoroughly reviewed all the evidence in the record and viewing all

inferences in the light most favorable to the Mr. Bonsall as the non-movant, for the

reasons stated below, I find that the USDOJ has met its burden of showing that it

conducted an adequate search under the law for all the records requested by Mr. Bonsall

and released all responsive documents.  In addition, I find that it properly withheld the

---

¹² The Fifth, Seventh, and Tenth Circuits have expressly held that officers of federal agencies are not proper parties to a FOIA action.  *Petrus*, 833 F.2d 582; *Brown-Bey v. U.S.*, 720 F.2d 467, 469 (7ᵗʰ Cir. 1983); *Parks v. U.S. I.R.S.*, 618 F.2d 677, 684 (10ᵗʰ Cir. 1980).  Several district courts have also held that individual officers are not proper parties.  *Hardy v. Daniels*, 2006 WL 176531 (D.Or. Jan. 23, 2006); *Laughlin v. C.I.R.*, 117 F.Supp. 2d 997 (S.D. Cal. 2000); *Savoie v. I.R.S.*, 544 F.Supp. 662, 667 (W.D.La. 1982); *Times Newspapers of Great Britain, Inc. v. CIA*, 539 F.Supp. 678, 685-86 (S.D.N.Y. 1982).

names of the victim, law enforcement officers, lab technicians, and other law enforcement personnel under FOIA exemption (b)(7)(C) ("FOIA Exemption 7").

## ANALYSIS

Mr. Bonsall argues that the FBI has improperly withheld responsive information in its entirety, in addition to improperly withholding the information redacted in the documents that it did release.  If Mr. Bonsall is correct, then it is within this Court's jurisdiction to order the FBI to search for and produce the responsive documents and to disclose any improperly withheld information.  The FOIA vests jurisdiction in federal courts to enjoin "an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 522(a)(4)(B).  The United States Supreme Court has interpreted this to mean that unless there is "a showing that an agency has (1) improperly (2) withheld (3) agency records," federal courts lack the authority to order the production of such records.  *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980).  The burden is on the agency to demonstrate that the information sought has not been improperly withheld.  *U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989).  If the court determines that all responsive documents were released and any withheld information was done so properly, then the Office's Motion for Summary Judgment should be granted.  Therefore, to properly assess the Office's Motion for Summary Judgment it must be determined whether (1) the FBI conducted an adequate search under the law, (2) whether it improperly withheld any responsive documents, and (3) whether the redacted information within the released documents was properly withheld under the asserted exemption.  This court must make a *de novo* determination of whether

17

government records were properly withheld under an FOIA exemption.  *Spannus v. U.S. Dept. of Justice*, 813 F.2d 1285, 1288 (4th Cir. 1987);  5 U.S.C. § 552(a)(4)(B) (2005).

"The FOIA requires each governmental agency to provide information to the public on request if the request 'reasonably describes' the record sought and is made in accordance with published agency rules for making requests."  *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994).  Although Mr. Bonsall does not directly challenge the adequacy of the search itself, he does argue generally that the FBI is withholding documents that would exonerate him.  Specifically, Mr. Bonsall suggests that the FBI is withholding serology test results.  (Paper No. 22, Bonsall Response at 3).  Thus, it should first be determined whether the FBI conducted an adequate search to uncover such a document or any other responsive documents.  Secondly, the record should be reviewed to determine whether there is any evidence of the existence of an allegedly missing document.

In judging the adequacy of an agency search for documents, the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has "demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents."  *Ethyl Corp.*, 25 F.3d at 1246 (citations omitted).  "To meet this burden of demonstrating the adequacy of its search, the agency must rely on reasonably detailed, nonconclusory affidavits and declarations submitted in good faith."  *Freeman v. U.S. Dept. of Justice*, 723 F.Supp. 1115, 1119 (D.Md. 1988).

Here, the FBI has submitted a 24-page declaration of David M. Hardy, Chief of the Records Management Division of the FBI, in which he detailed each step of Mr. Bonsall's requests and the FBI's response.  (Paper No. 16, Def.'s Mtn., Hardy Aff.).  He

also provided a description of the FBI search systems and identified and defined the files

and indices within each of these systems, as well as how they were searched, and with

what results, in response to Mr. Bonsall's requests.  (*Id*.).  The affidavit suggests that

searches of the systems were made more than once and each time revealed the same main

file uncovered and released in a previous search.  (Paper No. 16, Def.'s Mtn., Hardy Aff.,

Exs. I, L).  When information was uncovered in the branch Baltimore Office, that file

also was released in its entirety.  (Paper No. 16, Def.'s Mtn., Hardy Aff., Ex. L).  There is

no suggestion in the sworn declaration, or in the exhibits referenced by the declaration,

that the FBI withheld any responsive documents, nor does it suggest that there were

additional responsive documents to be located.

In *Freeman*, the Court had the opportunity to review a similarly detailed

declaration from FBI Headquarters.  723 F.Supp. 1115 (D.Md. 1988).  In *Freeman*, the

FBI detailed the filing system and the search method; however, the plaintiff stated that

there were specific documents that she thought should be in the record.  *Id*. at 1119.  The

Court found the plaintiff's argument unpersuasive because it was based upon speculation.

*Id*.  The Court also noted that "a search is not unreasonable simply because it fails to

produce all relevant material."  *Id*.  Thus, as the Court did in *Freeman*, I find that the FBI

has satisfied its burden of providing good faith proof of an adequate search and release of

responsive documents.[13]

---

[13] It should be noted that Mr. Bonsall requested copies of all "see references" and search slips and any other documents connected with his search.  The record lacks copies of any search slips or of copies of the actual index cards that led the FBI to the two released files.  Although the Plaintiff has not specifically noted these omissions as a basis for an inadequate search, I will address the issue here.  As the Court noted in *Freeman*, "it is the Court and not the plaintiff that must be satisfied that DOJ's search was adequate."  *Id*. at 1120.  The Court found that these omissions would not persuade the Court that the otherwise exhaustive search was not one.  *Id*.

Review of the record also contains evidence that the document that Mr. Bonsall argues is being improperly withheld was never created.  As stated above, Mr. Bonsall asserts that there are "preliminary test results" that would exonerate him.  In the FBI Headquarters file, a letter dated April 1, 1991 from the Charles County Sheriff to the FBI laboratory, lists samples taken from the victim and Mr. Bonsall and also lists other evidence.  (Paper No. 16, Def.'s Mtn., Hardy Aff., Ex. N, Bonsall at 1-2).  The letter instructs the lab to conduct examinations of the samples.  (*Id*. at 2).  It also states, however, that the evidence "should be held until called for by a member of this Agency." (*Id*. at 2).  In a letter dated June 28, 1991, from the FBI laboratory to the Charles County Sheriff, is a list of the specimens delivered to the lab on April 1, 1991.  (*Id*. at 3-4).  The letter also reports, however, that a conversation took place between FBI agents and the laboratory, and that based upon that conversation, any examinations of the evidence were discontinued.  (*Id*. at 5).  These letters suggest that no results from any examination were ever reached or reported.  Therefore, in addition to repeated searches failing to uncover any additional responsive documents, including preliminary test results as suggested by Mr. Bonsall, the record itself provides evidence that a document of "test results" was never created.  In sum, the FBI had made a reasonable search as required by law and released all responsive documents.

The issue that remains is whether the FBI properly asserted FOIA Exemption 7 as its basis to redact several names contained within the released documents.

*The Freedom of Information Act & Its Exemptions*

The FOIA sets forth a policy of broad disclosure of Government documents in order "to ensure an informed citizenry, vital to the functioning of a democratic society."

*NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327 (1978).

Congress realized, however, "that legitimate governmental and private interests could be

harmed by release of certain types of information and provided nine specific exemptions

under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621,102 S.Ct.

2054, 2059 (1982).  The FBI has the burden of demonstrating that the requested

information falls within an FOIA exemption.  *Hanson v. U.S. Agency for Int'l*

*Development*, 372 F.3d 286, 290 (4th Cir. 2004).  The FBI can meet this burden "by

describing the withheld material with reasonable specificity and explaining how it falls

under one of the enumerated exceptions." *Id*.   In the Office's motion, it has asserted

FOIA exemptions (b)(6) ("FOIA Exemption 6") and (b)(7)(C) ("FOIA Exemption 7") as

its basis for nondisclosure of law enforcement officers and personnel and the name of the

victim.  As detailed above, the Office and FBI have provided copies of the documents

with the names withheld.  It is easy to glean from even a cursory review of the documents

that the redacted portions of the documents contain names, and the information in close

proximity to the redacted portion indicates whether the specific name is an FBI agent,

police officer, other law enforcement personnel, or the victim. Because, as explained

below, I find that the FBI properly withheld the names under FOIA Exemption 7, I need

not address whether Exemption 6 also applies.[14]

    Exemption 7 authorizes disclosure of law enforcement records unless the agency

can demonstrate one of six specific harms.  *Abramson*, 456 U.S. at 622, 102 S.Ct at 2059.

The harm asserted here is provision (C) of Exemption 7, which protects "investigatory

records compiled for law enforcement purposes but only to the extent that the production

---

[14] *See supra* note 2 regarding FOIA Exemption 6.

of such records would . . . (C) constitute an unwarranted invasion of personal privacy. . .." 5 U.S.C. § 552(b)(7).[15]  The Exemption language indicates that judicial review of an asserted FOIA exemption privilege requires a two-part inquiry.  *Id*.; *Abramson*, 456 U.S. at 622, 102 S.Ct at 2059.  First, a requested document must be shown to have been an investigatory record "compiled for law enforcement purposes."  *Id*.  The documents at issue are police reports, evidence lists, and other correspondence within law enforcement agencies in furtherance of an investigation of a robbery and sexual assault.  There is nothing in the record suggesting that the records with the redacted names were created for any purpose other than law enforcement, thus, the first inquiry is satisfied.

When this first inquiry is satisfied, the agency then must demonstrate that release of the material would have one of the six results specified in the Act.  *Id*.  Here, the government has asserted (b)(7)(C) in withholding names of (1)  FBI and Support Personnel, (2) County Law Enforcement Employees, and (3) the victim in the investigation concerning Mr. Bonsall in 30 places among the sixteen documents that it produced in response to Mr. Bonsall's requests.  FOIA Exemption 7 allows the withholding of information if its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C) (2005).  Mr. Bonsall asserts that he is entitled to the withheld names because the information may help exonerate him from his criminal conviction.  (Paper No. 22, Pl.'s Motion at 3).

---

[15] The other harms are:  (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."  5 U.S.C. § 552(b)(7).

In order to determine whether Exemption 7 was properly asserted, "the public interest in disclosure of the responsive information must be weighed against the privacy interests in the information."  *Neely v. FBI*, 208 F.3d 461, 463 (4th Cir. 2000).  As explained by the Court in *Neely*, "the FOIA recognizes a public interest only in information bearing on 'an agency's performance of its statutory duties.'"  *Neely*, 208 F.3d at 464 *citing U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989).  This distinction is exemplified in the *Reporters Committee* case when it:

> rejected respondents' assertion of a public interest in the rap sheet of a reputed Mafia crime-boss, even though his company 'allegedly had obtained a number of defense contracts as a result of an improper arrangement with a corrupt Congressman,' because his rap sheet '[told the Court] nothing about matters of substantive law enforcement policy that are properly the subject of public concern.'

*Id*.

The *Neely* Court addressed almost identical issues to the one presented here regarding FOIA Exemption 7.  In *Neely*, like in the instant case, the FBI withheld names and identifying information of FBI agents, other government employees, and third parties.  *Neely*, 208 F.3d at 464.  The Court held that the public interest in most, if not all, of this information "would appear to be negligible."  *Id*.  The Court explained that there was no compelling allegation of agency corruption or illegality, and that the record lacked any reason to believe that the identifying information "bear in any way upon '[the] agency's performance of its statutory duties' or 'contribute significantly to public understanding of the operations or activities of government.'"  *Neely*, 208 F.3d at 464 *citing Reporters Committee*, 489 U.S. at 757.  As in *Neely*, the record before me lacks any allegation of agency corruption and release of the names of FBI agents, other law

enforcement officers and employees, or the name of the victim, would not provide insight to the public regarding the agency's activities.

As stated above, Mr. Bonsall asserts that the names should be released because he believes the information could help exonerate him. The *Neely* Court held that a person seeking information under FOIA to indirectly establish his innocence "does not alter the fact that there would appear to be no FOIA-cognizable public interest in such information." *Neely*, 208 F.3d at 464. The Court explained:

> The innocence of a particular defendant in a particular case 'tell[s] us nothing about matters of substantive law enforcement policy that are properly the subject of public concern.' And, as the Supreme Court has made clear in no uncertain terms, 'the identity of the requesting party' and 'the purposes for which the request for information is made' by that party 'ha[ve] no bearing on the merits of his or her FOIA request.' Moreover, as the [Supreme] Court [has]explained, []'FOIA was not intended to supplement or displace rules of discovery.' It is for these reasons that courts have sensibly refused to recognize, for purposes of FOIA, a public interest in nothing more than the fairness of a criminal defendant's own trial.

*Id.* (citations omitted).

In looking at the other side of the balancing test – the privacy interests in the information, and more specifically, the names of the FBI agents, government employees, and third parties - the *Neely* Court found that they "have well-recognized and substantial privacy interests in the withheld information. Among other things, these individuals have a substantial interest in the nondisclosure of their identities and their connection with particular investigation because of their potential for future harassment, annoyance, or embarrassment." *Id.* at 464-465 (citations omitted).[16] Thus, as in *Neely*, here, the

---

[16] In the instant case, one of the names withheld is the name of the victim in Mr. Bonsall's state court case. Although not mentioned in the record, it is likely that Mr. Bonsall learned the name of the victim during his state court trial. Even if Mr. Bonsall did learn the victim's name, the *Neely* Court explained that the

negligible public interest is outweighed by the well-recognized privacy interests of the law enforcement officers and personnel and the victim, such that the FBI properly withheld the names and the Office properly affirmed the FBI's decision.

Because the FBI conducted an adequate search, released all resulting documents, and properly withheld the names of law enforcement officers, supporting personnel, and the victim, there is no improper withholding of documents by the FBI under the FOIA, and the Defendant is entitled to judgment as a matter of law. Accordingly, summary judgment in favor of the Defendant must be granted.

This is a Court Order and shall be docketed as such.

/s/
Paul W. Grimm
United States Magistrate Judge

Dated:  2/21/06
ake

---

Supreme Court has rejected the claim that previously disclosed information's privacy interests were discounted.   *Id*. at 465.